UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
JORDAN McCARROLL,                       )
     Petitioner,                        )
                                        )
     v.                                 )    Civ. Action No. 09cv11018-NG
                                        )
THE COMMONWEALTH OF                     )
MASSACHUSETTS, BY THE ATTORNEY          )
GENERAL,                                )
     Respondent.                        )
```
GERTNER, D.J.

**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**
August 4, 2010

## I. INTRODUCTION

Jordan McCarroll ("McCarroll") is serving a seven-year federal sentence for arson on federal property, which will be followed by the remainder of a concurrent ten-to-twelve-year Massachusetts state sentence for arson and related charges. He was charged with setting a number of fires in Barnstable County, including one in a building on the Cape Cod National Seashore. While he was serving the federal sentence in Pennsylvania, the Barnstable Superior Court issued a writ of habeas corpus to bring him back to Massachusetts to face the state charges. He pled guilty to all but one of the charges; the prosecutor agreed not to pursue the final count. He was sentenced to imprisonment to run concurrent with the federal sentence. He was then returned to Pennsylvania.

Seven and a half months after his state plea and sentencing, McCarroll filed a pro se motion for new trial, arguing that Massachusetts failed to comply with the Interstate Agreement on Detainers ("IAD") when it extradited him from a Pennsylvania federal prison, and further, that counsel was ineffective for failing to raise the IAD as a defense. The IAD is an agreement

among the federal government, most states, and the District of Columbia, which provides procedural protections for prisoners who have detainers lodged against them for criminal charges in other jurisdictions. See Alabama v. Bozeman, 533 U.S. 146, 148-149 (2001); United States v. Mauro, 436 U.S. 340, 343 (1978). The Superior Court judge denied McCarroll's motion without a hearing, and the Massachusetts Appeals Court affirmed in an unpublished decision. Commonwealth v. McCarroll, No. 06-P-1878, 2008 WL 442493, at *2 (Mass. App. Ct. Feb. 19, 2008). Although McCarroll claims that he subsequently filed various motions in the Massachusetts Supreme Judicial Court ("SJC"), the SJC has no record of any filings regarding this case.

McCarroll presents four claims in his habeas petition: (1) Massachusetts unlawfully failed to invoke the IAD to secure his custody; (2) his state guilty pleas did not waive his right to assert an IAD error; (3) his attorneys rendered ineffective assistance of counsel when they did not raise the IAD issue; and (4) Massachusetts and the Bureau of Prisons violated his right to due process when they failed to provide an extradition hearing in Pennsylvania. Massachusetts moved to dismiss, asserting that the petition was untimely, the errors McCarroll claims could not be brought under the habeas statute, 28 U.S.C. § 2254, and he did not exhaust state remedies. Having carefully considered the parties' arguments and the evidence in the record, I **GRANT** Respondent's Motion to Dismiss (document #8) because the petition is time-barred.

## II.     BACKGROUND

On January 28, 2004, Barnstable police arrested McCarroll on suspicion that he had committed arson. See McCarroll, 2008 WL 442493, at *1. The state indicted him for arson and related offenses on April 30, 2004. Superior Court Docket, No. BACR2004-00165, at 4, 8

(document #21-1). On May 3, 2004, the state court arraigned him and released him on bail. Id. at 4. Another state indictment issued on August 3, 2004, for breaking and entering and other charges. Superior Court Docket, No. BACR2004-00114, at 7, 15 (document #9-2). On November 8, 2004, the state court arraigned him on the new charges and again released him on bail. Id. at 8.

On the evening of December 15, 2004, Wellfleet police officers discovered a burning house in the Cape Cod National Seashore. Joseph K. Granatino Aff. ¶¶ 11, 13 (document #1 in D. Mass. Docket No. 05-10097). McCarroll was in the area and tire tracks at the scene matched his car's tire treads. Id. ¶¶ 15, 19. Federal authorities issued a criminal complaint against McCarroll on December 17, 2004, and an information on April 6, 2005, each charging him with one count of arson on federal property in violation of 18 U.S.C. § 844(f)(1). McCarroll waived his right to be indicted and pled guilty to the federal charge on June 30, 2005. He was sentenced to 84 months imprisonment for the federal charge on November 10, 2005. The Bureau of Prisons then transferred him to a federal prison in Pennsylvania. McCarroll, 2008 WL 442493, at *1.

On February 9, 2006, the Barnstable Superior Court issued a writ of habeas corpus to secure McCarroll's custody. Writ of Habeas Corpus for Federal Defendant (document #1-2). There is no evidence in the record that Massachusetts ever lodged a detainer for McCarroll at the site of his imprisonment. After the Bureau of Prisons sent McCarroll to Massachusetts, he pled guilty on March 3, 2006, to all pending state charges, except for one count that the government agreed to dismiss. McCarroll, 2008 WL 442493, at *1; Superior Court Docket, No. BACR2004-00165, at 6 (document #21-1); Superior Court Docket, No. BACR2004-00114, at 10 (document

#9-2). The judge sentenced him to ten to twelve years' imprisonment concurrent with the federal sentence. On April 27, 2006, McCarroll filed a "motion to revise and revoke sentence" in order to correct his credit for time served; the superior court granted the motion on August 24, 2006. Superior Court Docket, No. BACR2004-00165, at 7-8 (document #21-1); Superior Court Docket, No. BACR2004-00114, at 14 (document #9-2).

On October 23, 2006, McCarroll filed a pro se motion for new trial in state court, claiming a violation of the IAD and ineffective assistance of counsel for failure to raise this issue. He submitted an affidavit with the motion stating that he "protested and objected to the prison officials here at U.S.P.-Lewisburg, including Warden Williamson, that I had not signed or agreed to sign any Interstate Agreement on Detainers with Massachusetts and that I did not want to be brought back to Massachusetts at that time." Aff. in Supp. of Mot. for New Trial ¶ 13 (document #9-4). He also asserted that he requested a hearing or meeting to appeal or officially object to the transfer. Id. ¶ 14. Finally, he explained that he informed his attorneys that his IAD rights had been violated, and they told him to bring up the issue sometime after sentencing. Id. ¶¶ 17, 19-20.[1] The superior court judge endorsed the motion "Denied without a hearing as being wholly without merit." McCarroll, 2008 WL 442493, at *2.

McCarroll filed a timely appeal to the Massachusetts Appeals Court, which affirmed in an unpublished opinion on February 19, 2008. McCarroll, 2008 WL 442493, at *2. The Court reasoned that McCarroll had the burden of proving he filed objections to the transfer. Id. (citing Commonwealth v. Martens, 398 Mass. 674, 678-79 (1986)). Although he provided an affidavit indicating that he objected, the superior court judge "did not have to accept the defendant's self-

---

[1] Three attorneys were present at the plea and sentencing: his attorneys in the two state cases and his attorney in the federal case. Aff. in Supp. of Mot. for New Trial ¶¶ 18-19 (document #9-4).

serving affidavit as true." McCarroll, 2008 WL 442493, at *2 (citing Martens, 398 Mass. at 678). The appeals court rejected the ineffective assistance claim for the same reason: The lower court was not obligated to credit McCarroll's affidavit. Id. McCarroll filed a petition for rehearing, which the appeals court denied on June 11, 2008. Appeals Court Docket, No. 2006-P-1878, at 3 (document #21-1).

At this point, the petitioner's and respondent's accounts diverge. McCarroll states that he "promptly" sent a motion for extension of time to appeal to the SJC. Jordan S. McCarroll Aff. ¶ 4 (document #15-2). Respondent claims that McCarroll never sought leave to appeal through a filing in the SJC. In any event, it is clear that the appeals court treated the motion for extension of time as having been filed in the appeals court. The court denied the motion on June 30, 2008, the same day it docketed it, stating that the denial was "without prejudice to refiling in the Supreme Judicial Court." Appeals Court Docket, No. 2006-P-1878, at 3 (document #21-1).

McCarroll asserts that his father then verified the SJC's address -- the same as the address for the Appeals Court except for the clerk's name -- and McCarroll sent a motion to file an appeal "out of time." Jordan S. McCarroll Aff. ¶¶ 6, 8-9 (document #15-2). He apparently mailed further motions in October, December and February, despite limited access to inmate mail services. Id. ¶¶ 10-15. Since he had not heard anything about his various motions, McCarroll called the SJC clerk's office in March and was told that he had no pending appeals in that court. Id. ¶ 16. He prepared another motion for appellate review and sent it to the SJC. Id. ¶ 17. McCarroll has presented a return receipt for this final motion, which is properly addressed to the SJC Clerk and signed as received on April 24, 2009. See Domestic Return Receipt

(document #15-1).  Nevertheless, the SJC has no record of any filings regarding this case.  See Docket Sheets for Cases Involving Jordan McCarroll (document #21-1).

McCarroll filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on June 12, 2009.

## III. DISCUSSION

The respondent argues that the habeas petition must be dismissed because it is time-barred, not reviewable in a habeas action, and involves unexhausted claims.  Since I hold that the habeas petition is time-barred, I do not discuss reviewability and exhaustion.

Although the respondent has not addressed the merits of McCarroll's habeas petition, I find that it is appropriate to consider them briefly before proceeding to the timeliness issue.[2] Essentially, McCarroll argues that state authorities violated Article IV(d) of the Interstate Agreement on Detainers, which states that "[n]othing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery." 18 U.S.C. app. 2 § 2 art. IV(d).  McCarroll contends that this provision provided a right to an extradition hearing, and that he did not receive such a hearing despite his objection to transfer.  It is true that prisoners have a right to a judicial hearing to challenge a receiving state's custody request when they are "transferred pursuant to the provisions of the Agreement."  Cuyler v. Adams, 449 U.S. 433, 445 (1981).

McCarroll's claim would be unlikely to succeed because Massachusetts was not required to -- and did not -- invoke the IAD when it secured his custody.  In Mauro, the Supreme Court

---

[2] At the least, consideration of the merits is relevant to the appropriateness of equitable tolling, as I discuss below.  See Trapp v. Spencer, 479 F.3d 53, 61 (1st Cir. 2007) (noting that "equitable tolling is not available in cases of dubious merit").

held that the IAD is not applicable when federal courts issue writs of habeas corpus, as opposed to detainers, to secure state prisoners. 436 U.S. at 361. The Court explained that problems the IAD seeks to eliminate are "for the most part the consequence of the lengthy duration of detainers." Id. at 360. For example, individuals with pending detainers are sometimes unable to participate in rehabilitation programs, and sentencing judges have difficulty deciding on appropriate sentences because a detainer could result in a subsequent sentence that would not be determined until the end of the current prison term. Id. at 360-61. These problems do not arise with writs of habeas corpus ad prosequendum because the writ is immediately actionable and operative only briefly. Id. at 361 & n.26.

In McCarroll's case, a *state court* sought custody of a *federal prisoner*, rather than a *federal court* seeking custody of a *state prisoner*. Nevertheless, a number of state courts have concluded that the IAD does not apply when states secure temporary custody of a federal prisoner through a writ of habeas corpus, based on essentially the same reasoning as in Mauro. See Sweeney v. State, 704 N.E.2d 86, 98-99 (Ind. 1998); People v. McLemore, 311 N.W.2d 720, 721 (Mich. 1981); McNulty v. State, No. 05-02-00635-CR, 2003 WL 575212, at *3 (Tex. App. Feb. 28, 2003). Similarly, in a case involving a request by Massachusetts for a New Hampshire state prisoner, the SJC explained that a writ of habeas corpus ad prosequendum could constitute a request for custody under the IAD, but only if the state also filed a detainer. Commonwealth v. Wilson, 504 N.E.2d 1060, 1064-65 (Mass. 1987). Since there is no evidence that Massachusetts ever lodged a detainer for McCarroll, or that it was required to do so, his claim would likely fail on the merits. It is also notable that McCarroll does not explain what he would have argued at an extradition hearing to avoid transfer.

In any event, McCarroll's petition was filed too late for review in this Court under any reasonable interpretation of the record. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") includes a one-year statute of limitations, running from the date that the "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see also Glawson v. Nelson, 484 F. Supp. 2d 190, 192 (D. Mass. 2007). Since Massachusetts allows 30 days for a criminal appeal, McCarroll's conviction was not final until April 2, 2006, thirty days after his March 3, 2006, guilty plea and sentence. See Mass. R. App. P. 4(b).

On April 27, 2006, twenty-five days into the one-year clock, McCarroll filed a motion to correct his credit for time served. Superior Court Docket, No. BACR2004-00165, at 7 (document #21-1); Superior Court Docket, No. BACR2004-00114, at 14 (document #9-2). A number of courts in this district have held that motions to revise and revoke sentence do not toll the statute of limitations under 28 U.S.C. § 2244(d)(2). Phillips v. Spencer, 477 F. Supp. 2d 306, 310 (D. Mass. 2007); LeDoux v. Dennehy, 327 F. Supp. 2d 97, 99-100 (D. Mass. 2004); Bland v. Hall, No. 00-12020-RWZ, 2002 WL 989532, at *2 (D. Mass. May 14, 2002), aff'd on other grounds, 62 Fed. Appx. 361, 361-62 (1st Cir. 2003); cf. Saunders v. Ficco, No. 04-10110-PBS, 2006 WL 357833, at *2 (D. Mass. Feb. 15, 2006) (explaining that a habeas petition would be time-barred even if tolling were appropriate for a motion to revise and revoke sentence). These decisions explained that motions filed in the trial court to change a sentence are neither separate from the original proceeding nor challenges to the legality of the proceeding or judgment. See, e.g., Phillips, 477 F. Supp. 2d at 310.

However, the First Circuit recently held that a Rhode Island post-conviction motion for a sentence reduction based on discretionary leniency *did* toll the statute of limitations. Kholi v. Wall, 582 F.3d 147, 156 (1st Cir. 2009). The court explained that the plain meaning of the tolling provision includes post-conviction motions heard by the trial judge. Id. at 153-54. In addition, "a fair balancing of the competing policies that inform the AEDPA" supported tolling. Id. at 156. Specifically, the goals of encouraging the pursuit of all available state remedies, avoiding parallel state and federal proceedings, and discouraging unnecessary habeas petitions, outweighed any interest in the finality of state court judgments. Id. at 154-56. Applying this same reasoning, McCarroll's motion regarding his sentence tolled the statute of limitations until the superior court granted the motion on August 24, 2006. Superior Court Docket, No. BACR2004-00165, at 7 (document #21-1); Superior Court Docket, No. BACR2004-00114, at 14 (document #9-2). Therefore, on October 23, 2006, when McCarroll filed a motion for new trial, 85 days of the one-year statute of limitations had passed.

As respondent admits, the motion for new trial again tolled the statute of limitations. The limitations period did not resume until July 1, 2008, after the appeals court denied McCarroll's petition for rehearing on June 11, 2008, and his twenty day appeal period expired. Ultimately, the statute of limitations ran out on April 7, 2009, when the remaining 280 days had passed. McCarroll did not file the habeas petition until June 12, 2009.[3]

---

[3] The state's memorandum contains a number of errors regarding calculation of the statute of limitations, but they are ultimately immaterial. First, respondent asserts that the conviction became final on March 3, 2006, when McCarroll pled guilty and received a sentence. 28 U.S.C. 2244(d)(1)(A) clearly provides that a judgment is not final until the expiration of time for seeking direct review. Second, respondent explains that the Appeals Court completed review of the appeal on June 13, 2008, and the limitations period restarted on July 3, 2008. However, the docket shows that the court denied McCarroll's petition for rehearing on June 11, 2008 and issued a rescript on the same date. Appeals Court Docket, No. 2006-P-1878, at 3 (document #21-1). Third, the state does not mention that McCarroll ever filed a motion to revise and revoke sentence, let alone discuss whether it tolled the statute of limitations. Finally, respondent stated that the statute of limitations ran out in December 2008, a date that is

The prison mailbox rule does not help the petitioner. This rule provides that a pro se prisoner's motion is filed on the date it is "deposited in the prison's internal mail-system" if the prisoner uses "the prison's system for recording legal mail." Morales-Rivera v. United States, 184 F.3d 109, 109 (1st Cir. 1999). If the prison does not record legal mail, then the Court may rely on other evidence to determine whether and when the motion was actually mailed. Herbert v. Dickhaut, No. 06-10036, 2010 U.S. Dist. LEXIS 25892, at *10 (D. Mass. Mar. 19, 2010). This Court recently invoked the prison mailbox rule for a motion for new trial that the petitioner claimed had been filed 238 days after AEDPA became effective. Id. at *3. The petitioner had presented a copy of the motion with the date written on it, had claimed under oath that he mailed the motion through the prison mail system, and a docket entry showed that the court had received a different motion filed with the motion for new trial. Id. at *10-11. The Court invoked the prison mailbox rule even though there was no direct evidence that the state court had received or docketed the filing. Id. at *13-14.

The Court will assume for the sake of argument that a motion for extension of time to appeal filed in the SJC would toll the statute of limitations and would be subject to the prison mailbox rule. Nevertheless, the rule would not apply for McCarroll's first filing in the appeals court, because that motion was both sent within the statutory tolling period and decided before the tolling period ended on July 1, 2008. There is also insufficient evidence to apply the rule for any of McCarroll's other claimed filings in the SJC. McCarroll has provided only an affidavit to support his allegation that he sent a motion to the SJC soon after receiving the notice from the appeals court, and additional motions in October, December, and February. He has not provided

---

inconsistent with the rest of its time line.

records of filings in the prison mail system, copies of the motions, or return receipts for any of these motions. (McCarroll does provide a return receipt for his April 24, 2009, filing in the SJC, but this motion was filed after the limitations period had already run. In addition, he has not provided a copy of the motion or any other evidence that the letter he sent to the SJC contained a motion.) It should also be noted that the Court has already ordered the respondent to file all SJC dockets involving Mr. McCarroll; respondent was unable to find any SJC dockets with filings regarding this case. See Docket Sheets for Cases Involving Jordan McCarroll (document #21-1).

The Court will not invoke equitable tolling to overcome the statute of limitations. The limitations period in habeas cases may be equitably tolled in "extraordinary circumstances" when the petitioner meets his burden of establishing a basis for this relief. Trapp v. Spencer, 479 F.3d 53, 60 (1st Cir. 2007); see also Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (holding that 28 U.S.C. § 2244(d) "is subject to equitable tolling"). Appropriate considerations include: (1) the petitioner's diligence in seeking habeas relief; (2) whether an extraordinary circumstance prevented a timely filing; (3) diligence in the pursuit of other post-conviction remedies; (4) prejudice to the prosecution; (5) the unavailability of equitable tolling "in cases of dubious merit"; and (6) whether it is a capital case. Trapp, 479 F.3d at 61.

The petitioner has certainly been diligent in this habeas action, but nearly all of the other factors weigh against equitable tolling.[4] Although McCarroll claims that he had limited access to mail services, he nevertheless states that in the nine months after the Appeals Court denied his

---

[4] The evidence regarding McCarroll's diligence in pursuing post-conviction remedies other than habeas is mixed. On the one hand, he claims that he repeatedly filed motions in the SJC that were ignored, and even has a return receipt for one such motion. See Affidavit of Jordan S. McCarroll ¶¶ 9-20 (document #15-2); Domestic Return Receipt (document #15-1). On the other hand, he missed his direct appeal deadline and repeatedly filed requests for additional time in the appeal of his motion for new trial. See Appeals Court Docket, No. 2006-P-1878, at 1-3 (document #21-1).

motion for extension of time to appeal he sent four motions to the SJC.  Affidavit of Jordan S. McCarroll ¶¶ 9, 13, 15 (document #15-2).  If this were true, he easily could have filed a habeas petition as well to protect his rights.  Furthermore, as in most habeas cases, the prosecution would be prejudiced if it were obliged to conduct a trial for McCarroll more than six years after the events at issue in this case.  And, of course, this is not a capital case.  Finally, McCarroll's substantive claims have, at best, dubious merit for the reasons explained in the beginning of this section, as well as the grounds noted in the appeals court decision.  Under the circumstances of this petition, an extended period of equitable tolling is not appropriate.[5]

## IV.    CONCLUSION

For the foregoing reasons, respondent's Motion to Dismiss (document #8) is **GRANTED** and this case is **DISMISSED.**.

**SO ORDERED.**

**Date:   August 4, 2010**              */s/ Nancy Gertner*
                                        **NANCY GERTNER, U.S.D.C.**

---

[5] Despite all of the factors discussed above, it could be argued that the second statutory tolling period should be equitably extended for a short amount of time.  McCarroll apparently did not learn that the motion for extension of time to appeal had been filed in the wrong court until he received a notice of docket entry from the appeals court clerk's office in a letter dated June 30, 2008.  Notice of Docket Entry, June 30, 2008 (document #15-1).  However, even if the statute of limitations began running again on June 14, 2008 – two weeks after the appeals court sent the letter – McCarroll would have needed to file his habeas petition by April 21, 2009, more than a month and a half before he actually filed the petition.